UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WESLEY RYAN TRUMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1549-G |
| LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the motion of the plaintiff Wesley Ryan Trumble ("Trumble") to remand this case to state court and (2) the motion of the defendant Liberty Life Assurance Company of Boston ("Liberty Life") to dismiss this case for failure to state a claim on which relief can be granted. For the reasons discussed below, both motions are denied.

## I.  BACKGROUND

Trumble was hired by Darden Restaurants Inc. ("Darden") in November 1998. In July 2002, he enrolled in a long-term disability plan ("Darden LTD plan") which

provided coverage through Liberty Mutual Assurance Company of Boston.  Plaintiff's

Original Petition ("Petition") ¶¶ 6.1, 6.3, *attached to* Defendant's Notice of Removal

("Notice of Removal") as Exhibit A.  After leaving work due to illness on June 29,

2004, Trumble made a claim for long-term disability benefits.  *Id*. ¶¶ 6.4-6.5.  When

these benefits were denied by Liberty Life by letter dated November 20, 2004,

Trumble appealed the decision.  The appeal was also denied in early 2005.  *Id*. ¶ 6.6.

On July 1, 2005, Trumble filed suit against Liberty Life in the 134th Judicial

District Court of Dallas County, Texas.  See *id*.  The suit asserted claims for breach of

the duty of good faith; breach of contract; violations of the Texas Insurance Code,

articles 21.21 and 21.55; violation of the Texas Deceptive Trade Practices Act,

("DTPA"), TEX. BUS. & COMM. CODE sections 17.46 and 17.50; and common law

fraud.  *Id*. ¶¶ 71.-7.10.

Liberty Life timely removed this action on August 5, 2005, arguing that

Trumble's claims are completely preempted by the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and, alternatively, that the

parties are of diverse citizenship.  Notice of Removal at 1-2.  Soon afterward, Liberty

Life filed its motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).  *See generally*

Defendant's Motion to Dismiss Plaintiff's Original Petition.  Immediately thereafter,

Trumble filed the instant motion to remand the case back to state court and to collect

his costs, including attorney's fees, for improper removal.  *See* Docket Sheet;

- 2 -

Plaintiff's Motion to Remand and Brief in Support of Motion to Remand ¶11.  The

jurisdictional issue before the court, therefore, is whether Trumble's claims are

completely preempted by ERISA.[1]  Resolution of this issue affects the court's

disposition of Liberty Life's motion to dismiss, so both motions will be decided

simultaneously.

## II.  ANALYSIS

### A.  ERISA Preemption Generally

District courts have federal question jurisdiction over civil cases "arising under

the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C. § 1331; *Frank*

*v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir. 1997).  Typically, whether an

action should be remanded to state court must be resolved by reference to the

plaintiff's pleading at the time of removal.  *State of Texas v. Alliance Employee Leasing*

*Corporation*, 797 F. Supp. 542, 544 (N.D. Tex. 1992).  If the court can make this

determination by reference to the plaintiff's complaint alone, the court need not go

---

[1]        There are two principal bases upon which a district court may exercise
removal jurisdiction:  (1) the existence of a federal question and (2) complete
diversity of citizenship among the parties.  *See* 28 U.S.C. §§ 1331, 1332; *Aaron v.*
*National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d 1157, 1160
(5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990).  Because the parties agree that
diversity of citizenship is not a proper basis for subject matter jurisdiction, *see*
Defendant's Brief in Support of its Response to Plaintiff's Motion to Remand
("Response Brief") at 6 n.11 ("Based on Plaintiff's assertion in his Motion to Remand
that Plaintiff seeks less than $75, 000, exclusive of interest and costs, Defendant
concedes that at this time, the Court does not have jurisdiction pursuant to 28 U.S.C.
§ 1332."), the only issue before the court is whether the plaintiffs' complaint presents
a federal question.

further.  However, should a district court need to go beyond the pleadings to  assess

the propriety of removal, it may do so.  *Id.*

In determining whether a claim arises under federal law, the well-pleaded

complaint rule allows a plaintiff to be the "master to decide what law he will rely

upon" in pursuing his claims.  *The Fair v. Kohler Die & Specialty Company*, 228 U.S.

22, 25 (1913); see also *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6-7 (2003);

*Aaron v. National Union Fire Insurance Company of Pittsburg, Pa.*, 876 F.2d 1157, 1160-

61 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990).  Where potential remedies

exist under both state and federal law, a plaintiff may choose to proceed only under

state law and avoid federal court jurisdiction.  *Caterpillar, Inc. v. Williams*, 482 U.S.

386, 392 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362,

366 (5th Cir. 1995).  "There is an exception to the well-pleaded complaint rule,

though, if Congress 'so completely pre-empt[s] a particular area that any civil

complaint raising this select group of claims is necessarily federal in character.'"

*Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting

*Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63-64 (1987)), *cert. denied*,

540 U.S. 1104 (2004).

The Supreme Court has held that state-law claims seeking relief within the

scope of ERISA § 502(a)(1)(B) must be recharacterized as arising under federal law,

and as such, are removable to federal court.  *Metropolitan Life*, 481 U.S. at 60, 67; see

also *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 762 (5th Cir. 1989).  According

to § 502(a)(1)(B), ERISA's civil enforcement provision:

> ### § 1132.  Civil enforcement
>
> > **(a)  Persons empowered to bring a civil action**
> >
> > A civil action may be brought --
> >
> > > **(1)**  by a participant or beneficiary --
> > >
> > > \* \* \*
> > >
> > > > **(B)**  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).  When a claimant seeks relief "within the scope of

[ERISA's] civil enforcement provisions," his or her claims are subject to *complete

preemption*.  *Metropolitan Life*, 481 U.S. at 66.  Complete preemption "'recharacterizes'

preempted state law claims as 'arising under' federal law for the purposes of . . .

making removal available to the defendant."  *McClelland v. Gronwaldt*, 155 F.3d 507,

516 (5th Cir. 1998); see also *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th

Cir.), *cert. denied*, 531 U.S. 1012 (2000).

Another type of preemption, known as "conflict" or "ordinary" preemption, "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are displaced or superceded] insofar as they . . . relate to any employee benefit plan . . .". 29 U.S.C. § 1144(a); see also *Christopher v. Mobil Oil Corporation*, 950 F.2d 1209, 1217 (5th Cir.), *cert. denied*, 506 U.S. 820 (1992). Any state law "relates to" an ERISA plan "if it has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).[2] However, even if the court were to find that Trumble's state law causes of action against Liberty Life relate to an ERISA plan within the meaning of § 514(a), conflict preemption is insufficient to create federal jurisdiction. See *McClelland*, 155 F.3d at 516-19 (finding that a claim that relates to an ERISA plan, but does not seek to enforce rights under § 502(a), does not create federal removal jurisdiction); *Copling v. Container Store, Inc.*, 174 F.3d 590, 594-95 (5th Cir. 1999).[3] To determine whether removal was proper, therefore,

---

[2]     While this "relate to" standard must be interpreted expansively to give the words their broad common-sense meaning, see *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001), "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21.

[3]     Recently, the Fifth Circuit partially overruled *McClelland* and *Copling*.
                                                                    (continued...)

the court must examine the contours of Trumble's state law claims as they relate to

complete preemption.

The threshold jurisdictional issue is whether the employee benefit plan offered

by Darden, Trumble's employer, constitutes an "employee welfare benefit plan"

within the meaning of ERISA.  If so, Trumble has potentially asserted a federal cause

of action.  The court has subject matter jurisdiction if at least one of Trumble's state

law causes of action is completely preempted.[4]  If, however, the plans do not fall

within the purview of ERISA or Trumble's state law claims are preempted only via

ERISA § 514(a), then the court lacks jurisdiction and Trumble's motion to remand

---

[3](...continued)
*Arana*, 338 F.3d at 440 n.11.  Prior to *Arana*, courts in the Fifth Circuit required both
§ 502 complete preemption and § 514 conflict preemption before finding federal
jurisdiction.  *Id.* at 439.  The plaintiff in *Arana* argued that "even if his claim falls
within ERISA § 502 so that it is completely preempted, there is no [federal]
jurisdiction because his claim is not conflict-preempted as well."  *Id.*  The *Arana* Court
disagreed, holding that "only complete preemption of a claim under ERISA § 502(a)
is required for removal jurisdiction; conflict preemption under ERISA § 514 is not
required; and we overrule the relevant portions of our precedent to the contrary."  *Id.*
at 440.  *Arana* did not, however, overrule the portions of *McClelland*, 155 F.3d at
516-19, and *Copling*, 174 F.3d at 594-95, holding that conflict preemption is
insufficient to create removal jurisdiction.  See also *Ellis v. Liberty Life Assurance
Company of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004) ("Conflict preemption
does not allow removal to federal court but is an affirmative defense against claims
that are not completely preempted under Section 1132(a).") (citing *Giles v. NYLCare
Health Plans, Inc*. 172 F.3d 332, 337 (5th Cir. 1999)), *cert. denied*, __ U.S. __, 125
S. Ct. 2941 (2005).

[4]       *See* discussion in part C, *infra*.

must be granted.  *Hansen v. Continental Insurance Company*, 940 F.2d 971, 973 (5th Cir. 1991).

## B.  Applicability of ERISA

ERISA applies to any "employee benefit plan" if that plan is established or maintained by any employer or employee organization engaged in interstate commerce.  29 U.S.C. § 1003(a); *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 240 (5th Cir. 1990).  There are two types of "employee benefit plans":  "employee welfare benefit plans" and "employee pension benefit plans."  29 U.S.C. §  1002(3).  This case concerns only the former.

Section 3(1) of ERISA, the definitional section, describes an "employee welfare benefit plan" as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . .

29 U.S.C. § 1002(1).[5]

---

[5]  Additional relevant definitions are provided in this section:

(3)  The term "employee benefit plan" or "plan"

(continued...)

Whether a set of insurance arrangements constitutes an "employee welfare benefit plan" is a question of fact governed by legal standards promulgated by the Department of Labor and the Fifth Circuit. *Hansen*, 940 F.2d at 976. The Department of Labor has issued regulations establishing criteria by which certain

---

[5](...continued)

> means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.
>
> * * *
>
> (5)  The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.
>
> (6)  The term "employee" means any individual employed by an employer.
>
> (7)  The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
>
> (8)  The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(3)-(8).

plans are excluded from ERISA's coverage.  29 C.F.R. 2510.3-1(j).  If insurance

arrangements satisfy *all* these criteria, then ERISA does not govern that plan and the

inquiry ends.  *Edwards v. Prudential Insurance Company of America*, 213 F. Supp. 2d

1376, 1382-83 (S.D. Fla. 2002) (citing *Thompson v. American Home Assurance

Company*, 95 F.3d 429, 435 (6th Cir. 1996); *Hansen*, 940 F.2d at 977; *Love v. Fortis

Benefits Insurance Company*, 120 F. Supp. 2d 997, 1002 (M.D. Ala. 2000); *Riggs v.

Smith*, 953 F. Supp. 389, 393 (S.D. Fla. 1997)).  If, however, the plan does not

satisfy the criteria for exclusion, a further test must be applied: the court must

determine whether the plan meets the standard adopted in the Fifth Circuit for what

plans *are* governed by ERISA.  *Hansen*, 940 F.2d at 976.

### 1.   Department of Labor Regulations

The Department of Labor, pursuant to authority granted to it by Congress,

issued regulations regarding exclusion of certain plans from ERISA's coverage.  These

regulations expressly provide that "employee welfare benefit plan[s]"

> . . . shall not include a group or group-type insurance
> program offered by an insurer to employees or members of
> an employee organization, under which
>
> (1) No contributions are made by an employer or employee
> organization;
>
> (2) Participation [in] the program is completely voluntary
> for employees or members;
>
> (3) The sole functions of the employer or employee
> organization with respect to the program are, without

endorsing the program, to permit the insurer to publicize
the program to employees or members, to collect premiums
through payroll deductions or dues checkoffs and to remit
them to the insurer; and

(4) The employer or employee organization receives no
consideration in the form of cash or otherwise in
connection with the program, other than reasonable
compensation, excluding any profit, for administrative
services actually rendered in connection with payroll
deductions or dues checkoffs.

29 C.F.R. 2510.3-1(j). As stated previously, a plan must satisfy each of these criteria

to be excluded from ERISA's governance. *Hansen*, 940 F.2d at 976-77 (citing *Kidder*,

932 F.2d at 351; *Gahn v. Allstate Life Insurance Company*, 926 F.2d 1449, 1452 (5th

Cir. 1991); *Memorial Hospital*, 904 F.2d at 241 n.6).

In this case, the first two criteria of the Department of Labor safe harbor

regulations are met: (1) no contributions are made by the employer Darden, Darden

Restaurants Inc. LTD Benefit Plan Document ("Darden LTD") at 40, *attached to*

Exhibit A as Exhibit 2 in Appendix in Support of Defendant's Response to Plaintiff's

Motion to Remand and Brief in Support ("Response Appendix") (cost funded by

100% employee contributions), and (2) participation by the employee is completely

voluntary. Darden Restaurants Inc. Summary Plan Description ("Darden SPD") at

7-9 (discussing eligibility and enrollment), *attached to* Exhibit A as Exhibit 1 in

Response Appendix. In addition, no evidence has been presented by either party

suggesting that Darden received any consideration in connection with the long-term

disability plan.  Therefore, the only issue is whether the Darden LTD plan meets the

third criteria -- limited involvement of the employer.[6]

Several cases discuss the fact that availability of the safe harbor exclusion often

turns on this third criterion.  *Edwards*, 213 F. Supp. 2d at 1382 (citing *Johnson v.*

*Watts Regulator Company*, 63 F.3d 1129, 1134 (1st Cir. 1995)).  In the analysis of the

employer's involvement, much depends on a court's characterization of the

employer's endorsement of the plan.  Recognizing this, the Department of Labor has

issued some guidance on this point:

> An endorsement . . . occurs if the employer or employee
> organization urges or encourages employee or member
> participation in the program or engages in activities that
> would lead an employee or member reasonably to conclude
> that the program is part of a benefit arrangement
> established or maintained by the employer or employee
> organization.

Advisory Op. No. 94-24A, 1994 WL 317906 (expressing the opinion that a brochure

from the employee organization which displays the organization's logo, address, and

characterization of the plan as "[the organization's] plan" reflects the organization's

"expressions of [the organization's] positive, normative judgement regarding the

program."); see also *Johnson*, 63 F.3d at 1134 (noting that the advisory opinion dealt

with an employee organization and finding no reason not to apply a similar rationale

---

[6]      Even if the other three criteria are met, the safe harbor provision is not
applicable unless the plan satisfies all four criteria.  In this case, the third criterion
turns out to be dispositive.

to involvement by an employer).  In essence, "the hallmark of endorsement is a lack of employer neutrality with respect to the insurance plan or policy."  *B-T Dissolution, Inc. v. Provident Life & Accident Insurance Company*, 101 F. Supp. 2d 930, 943 (S.D. Ohio 2000).

When analyzing whether an employer's involvement constitutes an endorsement, the viewpoint is to be from an "'objectively reasonable employee' viewing the circumstances as a whole."  *Edwards*, 213 F. Supp. 2d at 1383 (quoting *Johnson*, 63 F.3d at 1135).  From this point of view, it is evident that the employer's involvement in this plan precludes application of the safe harbor provision.  First, the Darden Restaurants Inc. summary plan description bears the name of the employer in large, bold letters at the bottom of the cover.  Darden SPD at cover.  This in combination with the Darden SPD introduction indicates Darden's encouragement of the insurance arrangement:

> Protection to help cushion against the hardships that can accompany sickness, accident or death is important to all of us.  To make this protection available to you, Darden Restaurants offers a comprehensive Group Life and Health Benefit Plan.  *Our* complete program of benefits is one of the most valuable packages in the restaurant industry.

*Id*. at 1 (emphasis added).  *See also* Advisory Op. No. 94-24A, 1994 WL 317906 (employee organization's logo and address on cover in combination with reference to plan as the organization's plan precludes application of the safe harbor provision); *Edwards*, 213 F. Supp. 2d at 1383-1385 (designation of plan as "our" plan held by

several courts to be indicia of employer behavior exceeding the scope of safe harbor regulations); *Johnson*, 63 F.3d at 1137 (distinguishing *Hansen*, where the corporate logo was embossed on the plan booklet and the booklet described the insurance policy as the company's plan, from the case before court)  This introductory language could be compared to the "prodding language" used by the employer in *Hansen* such that a reasonable employee would interpret it as encouraging enrollment in Darden's benefit plan.  See *Edwards*, 213 F. Supp. 2d at 1385 (quoting language from the employer's booklet in *Hansen*, 940 F.2d at 974).

Perhaps more persuasive than the employer's encouragement in the first few pages of Darden's summary plan description are the multiple references to ERISA contained therein.  Darden SPD at 75, 83-85 (detailing the employee's "Rights and Protection under ERISA"); Darden LTD at 41-45, 47.  Although not dispositive, such references have become an important factor in courts' analysis of the application of the safe harbor provision.  See *Johnson*, 63 F.3d at 1136; *Thompson*, 95 F.3d at 437 ("Thus, . . . where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy . . ., the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework.").

Beyond such documentary evidence of the employer's involvement in this plan, certain administrative functions performed by the employer here indicate more

employer involvement than the limited amount allowed by the Department of

Labor's safe harbor regulations.  Darden is the listed Plan Sponsor, Darden LTD at

40, and the Plan Administrator is its Employee Services Department.  Darden SPD at

75.  Enrollment services are furnished through the Employee Services Department,

Darden SPD at 8, which -- along with Liberty Life -- also answers questions regarding

long term disability benefits.  *Id*. at 1, 58.  Darden also provides employees seeking

benefits under the Darden LTD Plan with the required claim forms and additional

information.  Affidavit of Debbie Craig at 2, *attached to* Response Appendix as Exhibit

A; Exhibit 3 *attached to* Exhibit A in Response Appendix (forms and additional

information sent to employees).

In summary, Darden's role in this plan goes beyond that of a neutral employer,

thereby precluding application of the Department of Labor's safe harbor regulations.

## 2.  Fifth Circuit ERISA Plans

Since the insurance arrangement is not excluded from ERISA's governance via

the Department of Labor's safe harbor regulations, 29 C.F.R. 2510.3-1(j), the court

must now determine whether the plan falls within the Fifth Circuit's definition of an

ERISA plan.  There are two elements to this inquiry: first, the plan must be

established or maintained by the employer and second, the employer must have a

specific purpose -- the intent to provide benefits to its employees.  *Hansen*, 940 F.2d

at 977.

However, before undertaking this two step inquiry, the court must first

ascertain whether there is in fact a "plan." *Id*.  Here, the court must determine

whether "from the surrounding circumstances a reasonable person could ascertain the

intended benefits, beneficiaries, source of financing, and procedures for receiving

benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc);

see also *Memorial Hospital*, 904 F.2d at 240-41 (citing *Donovan* with approval).  The

Darden LTD plan clearly meets these criteria: a reasonable person would easily

conclude that the intended benefits were for long-term disability, the beneficiaries

were Darden employees and their dependents, the insurance premiums were to be

paid by the individual employees via payroll deductions, and benefits could be

received by submitting claims and other documentation to Liberty Life.

The next step in the inquiry is to apply the Fifth Circuit test for ERISA plans.

To determine whether an employer "established or maintained" an employee benefit

plan, "the court should [focus] on the employer . . . and [its] involvement with the

administration of the plan." *Gahn*, 926 F.2d at 1452.  In other words, "bare

purchases of health insurance where . . . the purchasing employer neither directly nor

indirectly owns, controls, administers, or assumes responsibility for the policy or its

benefits" does not qualify as an ERISA plan.  *Taggart Corporation v. Life & Health

Benefits Administration, Inc.*, 617 F.2d 1208, 1211 (5th Cir. 1980), *cert. denied*, 450

U.S. 1030 (1981).  Beyond this meaningful involvement with the administration of

the plan, the employer must also have a purpose to provide insurance for the benefit of its employees. *Hansen*, 940 F.2d at 978.

Darden's LTD plan, when analyzed under these standards, is governed by ERISA. Similar to the plan in *Hansen*, Darden did not purchase the insurance for its employees, but it did assume some responsibility in the administration of benefits by designating the Employee Services Department as its Plan Administrator and by distributing the necessary claim forms to its employees. Darden also distributed its summary plan description, detailing the multiple insurance offerings for its employees as "Group Insurance Plans," and encouraging its employees to participate. In addition, as stated in the above discussion of the Department of Labor regulations, the Darden summary plan description contained multiple references to ERISA and employee rights thereunder. Such references indicate a purpose and intent of the employer to provide benefits to its employees as well as to be governed by ERISA. This purpose, in conjunction with affidavits from Darden and Liberty Life employees, bolsters the conclusion that this is an ERISA welfare benefit plan. Affidavit of Debbie Craig at 2 ("The Darden LTD Plan is established and maintained by Darden for the purposes of providing long term disability benefits to its participating employees."); Affidavit of Paula McGee at 2, *attached to* Response Appendix as Exhibit B ("As the disability plan that is the subject of this litigation (Exhibit 2) was procured

by Darden for the benefit of its employees, including Wesley Ryan Trumble, this plan is an ERISA plan.").[7]

As the discussion above indicates, the Darden LTD Plan was an employee welfare benefit plan within the meaning of ERISA.  Accordingly, the next step in the inquiry is to determine whether the plaintiff's state law claims are completely preempted by ERISA.

### C.  Preemption of Trumble's State Law Claims

The Fifth Circuit, in *Memorial Hospital System*, 904 F.2d at 245, outlined two unifying characteristics of cases finding ERISA preemption of a plaintiff's state law causes of action.  See also *Cypress Fairbanks Medical Center Inc. v. Pan-American Life Insurance Company*, 110 F.3d 280, 283 (5th Cir.), *cert. denied*, 522 U.S. 862 (1997); *Foley v. Southwest Texas HMO, Inc.*, 226 F. Supp. 2d 886, 894 (E.D. Tex. 2002). Preemption of a plaintiff's state law causes of action has been found when:  (1) the state law claim addresses areas of exclusive federal concern, and (2) the claim directly affects the relationship between traditional ERISA entities -- the employer, the plan and its fiduciaries, and the participants and beneficiaries.  *Memorial Hospital*, 904 F.2d at 245; *Foley*, 226 F. Supp. 2d at 894.

---

[7]   The plaintiff specifically objects to these affidavits as impermissible hearsay.  Plaintiff's Reply and Objections to Defendant's Response to Plaintiff's Motion to Remand ¶¶ 2.1, 2.4.  Although these affidavits are admittedly self-serving and conclusory, the court has considered them.

First, preemption is appropriate, according to *Memorial Hospital*, where the

state law addresses areas of exclusively federal concern, including the right to receive

benefits under the terms of an ERISA plan.  904 F.2d at 245.  Congress' purpose in

enacting ERISA was "to promote the interests of employees and their beneficiaries in

employee benefit plans, . . . and to protect contractually defined benefits."  *Firestone*

*Tire & Rubber Company v. Bruch*, 489 U.S. 101, 113 (1989) (internal citations and

quotations omitted).  The Supreme Court has cautioned, however, that it has

"addressed claims of [ERISA] pre-emption with the starting presumption that

Congress [did] not intend to supplant state law."  *New York State Conference of Blue*

*Cross and Blue Shield Plans v. Travelers Insurance Company,* 514 U.S. 645, 654 (1995);

see also *Fort Halifax Packing Company, Inc. v. Coyne*, 482 U.S. 1, 19 (1987) ("ERISA

pre-emption analysis 'must be guided by respect for the separate spheres of

governmental authority preserved in our federalist system.'") (quoting *Alessi v.*

*Raybestos Manhattan, Inc.*, 451 U.S. 504, 522 (1981)).  Therefore, lawsuits against

ERISA plans for commonplace, run-of-the-mill state-law claims -- although obviously

affecting and involving ERISA plans -- are not preempted by ERISA.  *Mackey v. Lanier*

*Collection Agency & Service, Inc.*, 486 U.S. 825, 833 (1988).[8]

---

[8]     "[L]awsuits against ERISA plans for run-of-the-mill state-law claims such
as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan . . .
are relatively commonplace.  Petitioners and the United States (appearing here as
*amicus curiae*) concede that these suits, although obviously affecting and involving
ERISA plans and their trustees, are not pre-empted by ERISA § 514(a)."  *Mackey v.*
(continued...)

If the state law addresses an issue exclusively of federal concern, preemption is appropriate, according to *Memorial Hospital*, where the state law also directly affects the relationship among the traditional ERISA entities -- the employer, the plan and its fiduciaries, and the participants and beneficiaries.  904 F.2d at 245.  Otherwise, the law's effect on an employee benefit plan is "too tenuous, remote, or peripheral . . . to be preempted."  *Id.* at 249 (quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1467-68 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034 (1987)).

Here, Trumble seeks to recover for the allegedly wrongful denial of benefits under the Darden LTD Plan.  *See* Petition ¶¶ 6.1-6.8.  He claims that "[t]he conduct of Defendant [Liberty Life] constitutes a breach of the contract of insurance between Plaintiff and Defendant."  *Id.* ¶ 7.2.  Such a cause of action "to recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), affects a matter of exclusive federal concern and directly affects the relationship between traditional ERISA entities: the participant and the plan.  Thus, this claim is completely preempted by ERISA and renders Liberty Life's removal to federal court proper.  See *Ellis*, 394 F.3d at 276 n.34 (the district court properly found that, for the purposes of removal, the plaintiff's state breach of contract claim was completely preempted by ERISA).

---

[8](...continued)
*Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833 (1988) (footnote omitted).

When a complaint raises both completely-preempted claims and arguably conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction over the remaining claims. *Giles*, 172 F.3d at 337-338. The balance of Trumble's state law claims are arguably conflict-preempted, so the court will exercise supplemental jurisdiction over those causes of action. See *Ellis*, 394 F.3d at 276 (ERISA preempts the plaintiff's common law claim under Texas law for breach of the duties of good faith and fair dealing); *Ellis*, 394 F.3d at 278 (the plaintiff's claims under Texas Insurance Code articles 21.21 and 21.55 are preempted by ERISA); *Burgos v. Group & Pension Administrators, Inc.*, 286 F. Supp. 2d 812, 818-19 (S.D. Tex. 2003) (the plaintiff's claims under DTPA §§ 17.46, 17.50 are preempted by ERISA); *Perdue v. Burger King Corporation*, 7 F.3d 1251, 1255 (5th Cir. 1993) (ERISA preempts the plaintiff's state common law fraud claim because the only recoverable damages "relate to" the value of ERISA benefits); see also *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003) (for a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A) and thus saved from ERISA preemption, it must -- even though it "relates to" an ERISA plan -- satisfy two requirements:  it must be specifically directed toward entities engaged in insurance and it must substantially affect the risk pooling arrangement between the insurer and the insured).

D.  <u>Motion to Dismiss</u>

Since Trumble drafted his complaint for a Texas state court, the court concludes that amendment of the complaint will serve the interests of justice and will not unduly prejudice Liberty Life.  Liberty Life's motion to dismiss is based exclusively on the fact that Trumble's complaint contains only claims for relief under state law, a fact entirely understandable in light of the causes of action Trumble sought to pursue.  Therefore, the court will deny Liberty Life's motion to dismiss under Rule 12 without prejudice and afford Trumble the opportunity to amend his complaint in light of this memorandum opinion and order.  See *Rooney v. United Services Automobile Association*, No. SA-04-CV-137-RF, at 5 (W.D. Tex. May 10, 2004)), *attached to* Defendant's Response to Plaintiff's Motion to Remand.

III.  <u>CONCLUSION</u>

Accordingly, Trumble's motion to remand is **DENIED**.

Liberty Life's motion to dismiss is **DENIED** without prejudice.  Trumble is granted leave to amend his complaint on or before **November 21, 2005**.  Failure to file an amended complaint by that date may result in dismissal of this case without further notice.

**SO ORDERED**.

October 31, 2005.

_____
A. JOE FISH
CHIEF JUDGE